IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEMETRICE HERRON, | No. 4:23-CV-01996 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| KASEY HARRIS, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

FEBRUARY 10, 2026

Plaintiff Demetrice Herron filed the instant *pro se* Section 1983[1] action in 2023, alleging constitutionally deficient medical care at the State Correctional Institution in Frackville, Pennsylvania (SCI Frackville).  His single remaining claim alleges Eighth Amendment deliberate indifference to serious medical needs against defendant Kacie Harris.[2]  Presently pending is Harris's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Because Herron has failed to carry his burden at the summary judgment stage, the Court will grant Harris's Rule 56 motion.

---

[1] 42 U.S.C. § 1983.  Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2] Harris has recently changed her last name to "Esterly."  *See* Doc. 53-5 at 1.  However, the Court will refer to her as "Kacie Harris" for continuity and clarity in this case.

## I.  FACTUAL BACKGROUND[3]

Herron was transferred to SCI Frackville on May 5, 2022.[4] At that time, his medical history consisted of rhabdomyolysis, renal cysts, chronic anemia, and hematuria.[5] The following month, on June 23, 2022, Herron underwent a sleep study.[6]

In August 2022, Herron wrote an inmate request to staff member (form DC-135A) to Harris, inquiring about the results of the sleep study.[7] Harris is not a medical provider, but rather an office administrator who "managed the staffing of the [SCI Frackville] medical department and handled the day-to-day running of the unit."[8] Harris promptly responded to Herron, informing him that the results of the

---

[3]  Local Rule of Court 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.* Harris filed an appropriate statement of material facts in support of her Rule 56 motion. *See* Doc. 54. Herron has largely failed to respond to this statement, although he does point to some disputes of fact in his opposition brief. *See generally* Doc. 55. Few of Herron's factual counterstatements, however, are supported by references to the record, as required by Local Rule 56.1. *See id.*; *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (explaining that Local Rule 56.1 "is essential to the Court's resolution of a summary judgment motion due to its role in organizing the evidence, identifying undisputed facts*, and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence.*" (emphasis supplied) (internal quotation marks and citations omitted)). Accordingly, Harris's statement of material facts will be deemed admitted unless plainly contradicted by the record or properly countered by Herron. *See* LOCAL RULE OF COURT 56.1. For admitted facts, the Court may cite directly to Harris's statement of material facts.
[4]  Doc. 54 ¶ 22.
[5]  *Id.* ¶ 23; Doc. 53-4 at 47.
[6]  Doc. 54 ¶ 24; Doc. 53-8.
[7]  Doc. 54 ¶ 12; Doc. 53-7 at 2.
[8]  Doc. 53-5 ¶ 2.

2

test were still waiting to be reviewed by the physician, following which Herron would be informed of the findings.[9] Herron was additionally informed that he was able to sign up for sick call at no charge to review the findings of his sleep study, so long as the test results were available.[10] It appears that Herron followed this advice, as he avers in his complaint that in September 2022 he went to "treatment line" and asked a nurse about the results of his sleep study, and she informed him that the study was "positive."[11]

On October 7, 2022, Harris contacted "CPAP Supply USA" and ordered a Continuous Positive Airway Pressure (CPAP) machine for Herron[12] to treat his mild obstructive sleep apnea.[13] On November 16, 2022, Herron wrote Harris another request to staff member, asking about the status of the CPAP machine.[14] Harris responded several days later, informing Herron that she had ordered the CPAP machine at the beginning of October but had not yet received it.[15] She further informed Herron that she had followed up with the supplier via email about the status of the order.[16]

---

[9] Doc. 54 ¶ 12. Herron alleges, without evidence, that he never received a response to his DC-135A request sent to Harris in August 2022. *See* Doc. 55 at 2. This allegation is both unsupported by citation to the record (in violation of Local Rule 56.1) and contradicted by record evidence. *See* Doc. 53-5 ¶ 6; Doc. 53-7 at 2.
[10] Doc. 53-7 at 2.
[11] *See* Doc. 1 at 3.
[12] Doc. 54 ¶ 1; Doc. 53-2 at 1.
[13] *See* Doc. 53-7 at 3; Doc. 53-8 (sleep study results).
[14] *See* Doc. 53-6 at 1.
[15] *Id.*
[16] *Id.*; Doc. 53-2 at 2.

The record confirms that Harris emailed CPAP Supply USA on the morning of November 23, 2022, to inquire about the status of Herron's CPAP machine.[17] A representative from the company responded that same day, indicating that they had record of the order but that the machine had not yet shipped, and further assuring that the order would be expedited.[18] This information was then relayed to Herron by Harris in her response to his request to staff member.[19]

On December 22, 2022, Herron again reached out to Harris through a request to staff member asking about the status of the CPAP machine.[20] It appears that, at the time of this December 22 request, Herron was housed in the Restricted Housing Unit (RHU).[21] On January 11, 2023, Harris wrote back to Herron and informed him that the CPAP machine had arrived and that he would be placed on "call out" list to receive it.[22]

According to Harris, Herron was placed on the call out list for January 2023 but was a "no show."[23] Herron disputes that he was a no show, asserting that he was housed in the RHU and could not attend call out to pick up the CPAP machine.[24] He further questions whether he was even placed on the January 2023

---

[17] See Doc. 53-2 at 2-3.
[18] Id. at 2.
[19] See Doc. 53-6 at 1; Doc. 53-5 ¶ 16.
[20] Doc. 53-6 at 2.
[21] See id. (listing housing assignment as "RHU 19"). Herron alleges in his complaint that he was housed in the RHU from December 17, 2022, to March 16, 2023. See Doc. 1 at 4.
[22] Doc. 54 ¶ 8; Doc. 53-6 at 2.
[23] See Doc. 54 ¶¶ 9, 16; Doc. 53-5 ¶ 18; Doc. 53-7 at 2.
[24] See Doc. 55 at 1, 2.

4

call out list.[25]  In any event, Herron was placed on another call out list for March 3, 2023.[26]  However, he did not receive the CPAP machine at this time either,[27] and on March 16, 2023, he was transferred to SCI Camp Hill.[28]

Herron returned to SCI Frackville on April 13, 2023.[29]  That same day, he filed a formal grievance under DC-ADM 804 regarding the delay in receiving the CPAP machine.[30]  He further alleges that on April 19, 2023, during a chronic care visit with Dr. Baddick, he inquired about his CPAP machine and Dr. Baddick recommended that he file a grievance (which Herron had already done).[31]

Finally, on April 28, 2023, Herron received his CPAP machine.[32]  It is undisputed that, during the time in question, Herron never signed up for sick call regarding his mild obstructive sleep apnea or CPAP machine.[33]  It is likewise undisputed that Harris did not receive any further communication from Herron about this issue after she responded to his request to staff member on January 11, 2023.[34]

---

[25] *See id.* at 2, 4.
[26] Doc. 54 ¶ 10; Doc. 53-5 ¶ 20; Doc. 53-6 at 3.
[27] *See* Doc. 53-6 at 3 (marking Herron as a "no show" again).
[28] *See* Doc. 53-3 at 14.
[29] Doc. 54 ¶ 17.
[30] *See* Doc. 53-7 at 1.
[31] *See* Doc. 1 at 5; Doc. 55 at 3.
[32] Doc. 54 ¶ 19.
[33] *Id.* ¶ 21.
[34] *Id.* ¶ 79; Doc. 53-5 ¶ 26.

Herron filed the instant Section 1983 lawsuit in this Court in November 2023.[35] He named Wellpath, LLC (Wellpath) and Harris as defendants.[36] Wellpath was subsequently dismissed from the action pursuant to Federal Rule of Civil Procedure 12(b)(6).[37] Harris now moves for summary judgment on Herron's remaining Eighth Amendment medical indifference claim.[38] That Rule 56 motion is fully briefed and ripe for disposition.

## II.   STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[39] Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[40] Material facts are those "that could alter the outcome" of the litigation, and "disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[41]

At the Rule 56 stage, the Court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a

---

[35] *See generally* Doc. 1.
[36] *See id.* at 1, 2.
[37] *See* Doc. 27 ¶ 1(a).
[38] Doc. 52.
[39] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[40] FED. R. CIV. P. 56(a).
[41] *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

genuine issue for trial."[42] The Court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor."[43] This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving party on the claim or claims at issue.[44] A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]."[45] Succinctly stated, summary judgment is "put up or shut up time" for the nonmoving party.[46]

## III. DISCUSSION

Harris contends that she is entitled to summary judgment because Herron cannot proffer competent evidence to establish she acted with deliberate indifference toward his serious medical needs. The Court agrees.

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."[47] To state an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must plausibly allege that "(1) he had

---

[42] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[43] *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014).
[44] *Liberty Lobby*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986).
[45] *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252) (alteration in original).
[46] *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Berkeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).
[47] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff."[48] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[49]

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, or denial of reasonable requests for treatment resulting in suffering or risk of injury.[50] Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain."[51] Claims sounding in mere medical negligence will not suffice.[52]

The Court will assume that Herron's mild obstructive sleep apnea rises to the level of a serious medical need. His Eighth Amendment claim against Harris, however, fails at the second, subjective element. That is, he has not proffered any

---

[48] *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023) (citation omitted); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).
[49] *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).
[50] *See Durmer v. O'Carroll*, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting *Lanzaro*, 834 F.2d at 346).
[51] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).
[52] *Rouse*, 182 F.3d at 197.

evidence that Harris acted with deliberate indifference toward his serious medical needs.

Harris is not a medical provider and played no part in Herron's actual medical treatment.[53]  Notwithstanding her role as an office administrator, she was at all times responsive to Herron's communication and took steps to address his concerns when he contacted her.  Any time Herron sent Harris a request to staff member, she responded in a timely manner and provided informed answers to Herron's questions.  Harris not only ordered Herron's CPAP machine, but she also followed up with the medical supply company about the status of the order and when it would be shipped.  The fact that the medical supply company appears to have erroneously delayed shipment of the machine is certainly not Harris's fault.  And when the CPAP machine was eventually received at SCI Frackville, Harris scheduled Herron for call out and informed him about this appointment through her response to his December 22 request to staff member.

There is some dispute regarding whether Herron was placed on "call out" in January 2023 or whether he was denied receipt of his CPAP machine through the call out process because he was housed in the RHU.  This dispute is immaterial to the instant Eighth Amendment claim.  That is because Herron has proffered *no*

---

[53] *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (noting that nonmedical prison officials are not "chargeable with the Eighth Amendment scienter requirement of deliberate indifference" unless they have a reason to believe (or actual knowledge) that prison doctors or other medical staff are mistreating or not treating a prisoner).

9

competent evidence that Harris knew or was expected to know that (1) Herron could not attend call out if he was housed in the RHU (if that is indeed the case, as this issue remains unsettled), or (2) Herron did not receive the CPAP machine in January 2023 when he was scheduled to pick it up.  As noted above, it is undisputed that Herron *never* contacted Harris again following his December 22, 2022 request to staff member and her January 11, 2023 response.  Furthermore, Herron was free at any time to contact the medical department, a nurse or physician, a nursing supervisor, or the Corrections Health Care Administrator (CHCA) regarding his medical device, yet he did not do so.[54]  Nor did he raise this issue during his numerous medical appointments during the time in question.[55]

Thus, even when viewing the facts in a light most favorable to Herron, there is no evidence of "unnecessary and wanton infliction of pain" by Harris.  Far from it.  Harris is a nonmedical prison official, and it is undisputed that Herron was under the care of qualified physicians and other medical staff during the time at issue.  Harris, moreover, never ignored Herron or intentionally delayed receipt of the CPAP machine.  Herron seems to believe that Harris should have done more to ensure that he received the CPAP machine after it was delivered to SCI Frackville.  Yet such an allegation—at most—implicates negligence, not deliberate indifference, and therefore does not rise to the level of a constitutional violation.

---

[54] *See* Doc. 53-7 at 2-3.
[55] *See* Doc. 54 ¶¶ 25-47.

Herron undoubtedly experienced some delay in receiving his CPAP machine after he was diagnosed with mild obstructive sleep apnea. But that delay is largely unattributable to Harris, and delay in itself does not constitute deliberate indifference. The upshot is that, based on the present Rule 56 record, a reasonable jury could not find that Harris acted with deliberate indifference toward Herron's serious medical needs. The Court will therefore grant Harris's motion for summary judgment.

## IV. CONCLUSION

Based on the foregoing, the Court will grant defendant Kacie Harris's motion for summary judgment under Federal Rule of Civil Procedure 56. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge